UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADAM J. JOHNSON,

                Plaintiff,

v.                                      Case No:   2:13-cv-500-FtM-38CM

MIKE SCOTT, THOMAS W. COLE
and UNKNOWN SHERIFF'S
DEPUTY(S),

                Defendants.
_____/

## ORDER[1]

      This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. #35) filed on September 8, 2014.  Plaintiff filed a Response in Opposition[2] on September 20, 2014.  (Doc. #39).  Thereafter, Defendants requested (Doc. #41), and the Court granted (Doc. #42), leave to file a Reply, which Defendants filed on September 29, 2014.  (Doc. #43).  Plaintiff followed with a Surreply filed on October 3, 2014.  (Doc. #45).  Thus, the Motion is now ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] At this time, the Court would like to note Plaintiff's unacceptable, blatant disregard for the Local Rules of the Middle District of Florida.  Rule 1.05(a) explicitly states that all papers tendered by counsel for filing should be double-spaced with one-and-one-fourth inch top, bottom, and left margins and a one-to-one-and-one-fourth inch right margin.  Instead of abiding by Rule 1.05(a), Plaintiff tendered his Response in Opposition and Surreply with, at best, one-and-one-half-spaced font and half-inch margins.  In interest of judicial economy, the Court chooses not to strike these documents in this instance, but warns Plaintiff that further blatant disregard of the Local Rules will lead to repercussions, including the possibility of Rule 11 sanctions.

**Background**

Plaintiff, Adam J. Johnson, is a resident of the city of Fort Myers, which is located within Lee County, Florida.  (Doc. #37-2 at 4-5).  Defendant Mike Scott is the Sheriff for Lee County, and Defendants Thomas W. Cole ("Detective Cole") and Unknown Sheriff's Deputy(s) are a detective and deputy(s) with the Lee County Sheriff's Office ("LCSO"), respectively.  (Doc. #37-1 at 6).  On October 19, 2009, an individual named Johnnie Craft contacted the LCSO seeking their assistance with a home burglary that resulted in the theft of numerous firearms.  (Doc. #35-1 at 4).  While investigating the home burglary and theft, Detective Cole came into contact with an individual named Keith Beland. (Doc. #37-1 at 18).

On October 22, 2009, Mr. Beland agreed to provide Detective Cole with a sworn statement regarding his knowledge of the burglary and theft.  (Doc. #38).  During his testimony, Mr. Beland stated that on October 20, 2009, he visited the residence of a friend named Rudy Lopez.  (Doc. #38 at 1:02-2:13; #35-1 at 5).  When Mr. Beland entered Mr. Lopez's house, Mr. Lopez exhibited numerous firearms – approximately 20 guns in total – including handguns, shotguns, and assault rifles.  (Doc. #38 at 1:02-2:13; #35-1 at 5). Mr. Beland left Mr. Lopez's residence shortly thereafter, but returned later that evening and witnessed Mr. Lopez and another individual, who identified himself as "Adam," loading guns into a black or blue Chevrolet S-10 truck.  (Doc. #38 at 5:12-5:54; #35-1 at 5).  In addition to witnessing Mr. Lopez and "Adam" load guns into Adam's truck, Mr. Beland testified that he witnessed an individual named Chad (later identified as Chad Howard) acting as a lookout because Mr. Lopez had previously been robbed himself. (Doc. #38 at 5:12-5:54; #35-1 at 5).

Thereafter, Mr. Beland witnessed Mr. Lopez and Adam leave Mr. Lopez's residence with the weapons loaded into the truck and return later only to load more weapons and leave again.  (Doc. #38 at 8:54-9:06; Doc. #35-1 at 5).  Immediately before concluding Mr. Beland's sworn interview, Detective Cole attempted to ascertain the full name of "Adam" by showing Mr. Beland six individual photos of men named Adam.  (Doc. #37-1 at 62:10-62:12).  But Mr. Beland did not believe that any of the six pictures shown were the Adam that he witnessed loading weapons into the truck and leaving with Mr. Lopez.  (Doc. #37-1 at 62:10-62:25).  Nevertheless, on a later date, Detective Cole provided Mr. Beland with a lineup of six more photos of men named Adam on a sheet of paper.  (Doc. #37-1 at 60:21-61:15).  This time, however, Mr. Beland was able to point to the individual that he saw loading weapons with Mr. Lopez, which turned out to be the Plaintiff, Adam Johnson.  (Doc. #37-1 at 61:07-61:15; #35-2).

Because Mr. Beland provided the names of other individuals involved, including Rudy Lopez and Chad Howard, Detective Cole sought to bring those individuals in for questioning also.  (Doc. #37-1 at 24:13-24:24).  On October 22, 2009, Detective Cole was able to conduct a sworn interview with Mr. Lopez.  (Doc. #35-3).  During this interview, Mr. Lopez testified that three days earlier, Chad Howard and another man named Kyle McCartney brought Mr. Craft's stolen weapons to his residence.  (Doc. #35-3 at 2).  Mr. Lopez then corroborated the events that Mr. Beland previously testified to and attested that "Adam's" truck was the vehicle that was used to transport the weapons the night that they were moved.  (Doc. #35-3 at 4-5).

As a result of the foregoing and other factual discoveries, an arrest warrant was issued for five individuals, including Plaintiff.  (Doc. #43-1).  Plaintiff was eventually

released from jail a month after his arrest, and his charges were deemed *nolle prosequi*. Subsequently, Plaintiff filed an Amended Complaint asserting nine counts:  Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 against Defendant Mike Scott, as Sheriff of Lee County, Florida (Count 1); False Imprisonment against Defendant Mike Scott, as Sheriff of Lee County, Florida (Count 2); Negligence against Defendant Mike Scott, as Sheriff of Lee County, Florida (Count 3); Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 against Defendant Thomas Cole (Count 4); False Imprisonment against Defendant Thomas Cole (Count 5); Negligence against Defendant Thomas Cole (Count 6); Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 against Defendant(s) Unknown Sheriff Deputy(s) (Count 7); False Imprisonment against Defendant(s) Unknown Sheriff Deputy(s) (Count 8); and Negligence against Defendant(s) Unknown Sheriff Deputy(s) (Count 9).  (Doc. #16 at 3-29).

**STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Similarly, an issue of fact is material if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding whether the moving party has met this initial burden, courts must review the record and draw all reasonable inferences from the record in a light most favorable to the non-moving

4

party.  *See Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the court determines the moving party has met this burden, the burden shifts to the non-moving party to present facts showing a genuine issue of fact exists to preclude summary judgment.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  *Demyan v. Sun Life Assurance Co. of Can.*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the court should grant the summary judgment.  *See Celotex*, 477 U.S. at 322-23.  Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied.  *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).  With this standard in mind, the Court will address Defendants' arguments below.

## Discussion

### A. *Counts 7, 8, and 9 against Defendant(s) Unknown Sheriff's Deputy(s).*

As a precursor to ruling on the substance of Defendants' Motion, the Court understands that Plaintiff "concedes at this time that [Defendant(s)] Unknown Sheriff's Deputy(s) . . . should be dismissed" from this action.  (Doc. #39 at 3, ¶ 19).  Because of Plaintiff's concession, and because Defendants requested such a dismissal in their Motion (Doc. #35 at 21-23), the Court dismisses Counts 7, 8, and 9 against Defendant(s) Unknown Sheriff's Deputy(s) with prejudice.  *See also Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming district court's dismissal of the plaintiff's claims

against fictitious parties named in the complaint and noting that "the description in [the plaintiff's] complaint was insufficient to identify the defendant among the many" officers employed at the agency).

     **B.** *Counts 4 and 5 against Defendant Thomas Cole*

Defendants first seek summary judgment on the basis that Detective Cole is shielded against Counts 4 and 5 by qualified immunity. (Doc. #35 at 7). In support, Defendants maintain that Detective Cole had probable cause for arresting Plaintiff, qualifying Detective Cole for immunity and preventing Plaintiff from asserting counts of false imprisonment and civil rights violations against him. (Doc. #35 at 7). First, Defendants contend that "there is no dispute that Detective Cole was acting within the scope of his discretionary authority in arresting and detaining Plaintiff." (Doc. #35 at 9). Second, because Detective Cole was acting within the scope of his discretionary authority, Defendants assert that Plaintiff cannot meet the shifted burden of illustrating that his arrest was made without probable cause. (Doc. #35 at 11).

In order to exhibit that probable cause existed for Plaintiff's arrest, Defendants point the Court's attention to the fact that Mr. Beland identified Plaintiff out of a photo lineup; Mr. Beland's physical description of "Adam" fit Plaintiff's physical characteristics; Mr. Beland described the identical make and model of the vehicle that Plaintiff owns; and Plaintiff has admitted to being "a friend or acquaintance of the principals in the crime." (Doc. #35 at 16). In the alternative, Defendants argue that even if full probable cause was not present, arguable probable cause was present. (Doc. #35 at 16). As Defendants elucidate by citing Eleventh Circuit precedent, "the existence of arguable probable cause for Plaintiff's arrest would entitle Detective Cole to qualified immunity." (Doc. #35 at 16).

As such, because Mr. Beland was able to identify Plaintiff out of a photo lineup, Defendants argue that this identification, at the least, was sufficient to establish arguable probable cause. (Doc. #35 at 17).

In response, Plaintiff "agrees that [Detective Cole] was acting in his official capacity and under color of law[,]" thereby shifting the burden to "Plaintiff to establish that [Detective Cole] is not entitled to qualified immunity." (Doc. #39 at 5, ¶ 22).  But Plaintiff's agreement with Defendants' argument ends there.   Contrary to Defendants, Plaintiff asserts that when the facts are viewed in the light most favorable to him, the non-moving party, it is clear that he "was arrested without probable cause or arguable probable cause." (Doc. #39 at 5, ¶ 22).  As Plaintiff explains, "[t]he taped statements of the other suspects in the criminal case, the Information filed by the State[,] and other documents filed with the [c]riminal [c]ourt [] fail[] to state probable cause for [] Plaintiff to be arrested." (Doc. #39 at 6, ¶ 23).

In support, Plaintiff first notes that Detective Cole interviewed two other individuals, Jason Hayes and Cassandra Braun, who provided testimony that Plaintiff believes "contradicts" Mr. Beland's testimony.  (Doc. #39 at 6, ¶ 23). Specifically, Plaintiff points the Court's attention to the fact that neither of those individuals ever testified that they witnessed Plaintiff conduct the activities that Mr. Beland testified he witnessed Plaintiff conduct – i.e., help Mr. Lopez load weapons into a truck. (Doc. #39 at 6, ¶ 23).  Second, Plaintiff asserts that "[t]he contradictory facts were glaring as Keith Buelund [sic] was a witness in passing, while Rudy Lopez, who was part of the crime[,] named a different person as loading the truck." (Doc. #39 at 7, ¶ 25).  As Plaintiff sees it, although Detective Cole was armed with "conflicting statements as to who was present[,]" Detective Cole

"failed to do any independent investigation related to the identity of the third person involved with the loading of the truck with the stolen firearms." (Doc. #39 at 7, ¶ 25).

Third, Plaintiff disputes that Detective Cole conducted an unbiased photo lineup when he presented the second set of photos of men named Adam on a piece of paper to Mr. Beland.  That is, Plaintiff states that while "all the other photos [on the paper] where [sic] of a head and shoulders," Plaintiff's photo "was a close[-]up of his face." (Doc. #39 at 7, ¶ 26).  As a result of this discrepancy, Plaintiff contends that his photo in the lineup was "highly suggestive." (Doc. #39 at 8, ¶ 27).  Moreover, Plaintiff takes issue with the fact that the six photo lineup that Mr. Beland used to identify Plaintiff "lacks the date and time it was done[,] [] who conducted the lineup[,]" or Detective Cole's or "any other person's signature or name on the lineup stating [they] witnessed the identification." (Doc. #39 at 11, ¶ 32).  According to Plaintiff, the lack of these items makes it "entirely plausible that Detective Cole forgot about [Plaintiff] after his arrest and later tried to cover his tracks to make his arrest seem legitimate after letting him sit in jail for six weeks, when faced with no probable cause or arguable probable cause for his arrest." (Doc. #39 at 11, ¶ 32).

Fourth, Plaintiff questions the credibility of Mr. Beland. Plaintiff specifically points the Court's attention to the fact that 1) Mr. Beland testified it was dark outside when he witnessed all the events; 2) Mr. Beland was  "admittedly . . . rushed away by [Mr.] Lopez" when he made brief face-to-face contact with the individuals loading the guns; 3) Mr. Beland was not aware if "Adam" was the real name of the individual that he spoke to; and 4) Mr. Beland was unable to identify "Adam" from the first six pictures shown to him during his sworn statement. (Doc. #39 at 8, ¶ 28).  Fifth and finally, Plaintiff provides the testimony of his expert, Kevin C. Kozak, who, after reviewing the complete case file,

opined that "[Detective] Cole did not enumerate sufficient facts in his reports to establish probable cause for [Plaintiff's] arrest."  (Doc. #39 at 13, ¶ 40).

It is well established that qualified immunity "provides protection for government officials performing discretionary functions and sued in their individual capacities as long as their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Storck v. City of Coral Springs,* 354 F.3d 1307, 1313 (11th Cir. 2003) (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994)).  "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'"  *Id.* at 1314 (quoting *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1370 (11th Cir.1998)).

In order to utilize qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place."  *Id.* (citing *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991)). Here, the parties are in agreement that Detective Cole was acting within the scope of his discretionary authority when he arrested Plaintiff.  (Doc. #35 at 9 ("[I]t is clearly within the scope of a detective's authority to make arrests."); Doc. #39 at 5, ¶ 22 ("Plaintiff agrees that [Detective Cole] was acting in his official capacity and under color of law.")). Therefore, the burden now shifts to Plaintiff to establish that qualified immunity is inapplicable to the facts at hand.  *Storck,* 354 F.3d at 1314.

To assist in determining whether a plaintiff has met their burden of illustrating that qualified immunity does not apply, the Supreme Court provided a two-part test. First, the plaintiff must illustrate "that the official violated a statutory or constitutional right."  *Ashcroft*

*v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011). Second, the plaintiff must illustrate "that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotations and citations omitted). However, when applying this two-part test, "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

Here, the Court will address the "violation-of-a-constitutional-right" prong first. Although Plaintiff does not specify an exact constitutional right in Counts 4 or 5 that he believes Detective Cole violated, based on Plaintiff's Amended Complaint, it appears that Plaintiff alleges Detective Cole violated his Fourth and Fourteenth Amendment rights by falsely arresting and imprisoning him. Both parties recognize that "[t]he existence of probable cause at the time of arrest absolutely bars a § 1983 claim for false arrest [and imprisonment] under the Fourth Amendment." *Atterbury v. City Of Miami Police Dep't,* 322 F. App'x 724, 727 (11th Cir. 2009). As the Eleventh Circuit notes, "the standard for determining the existence of probable cause is the same under both Florida and federal law—whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." *Rankin v. Evans,* 133 F.3d 1425, 1433 (11th Cir. 1998) (internal citation, quotations, and brackets omitted).

There are two forms of probable cause that entitle a public official to qualified immunity: actual probable cause and arguable probable cause. *Atterbury,* 322 F. App'x at 727 (citing *Case v. Eslinger,* 555 F.3d 1317, 1327 (11th Cir. 2009)). "Actual probable cause exists when the facts and circumstances within the police officer's knowledge 'warrant a reasonable belief that the suspect had committed or was committing a crime.'"

*Id.* "This knowledge may be garnered from an informant's allegations and corroborating evidence." *Id.* "The evidence of criminal activity need not be overwhelming." *Id.* "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal citations omitted). "Thus, an officer must have something more than mere suspicion but he may have less than convincing proof." *Id.* (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)). In contrast, "[a]rguable probable cause to arrest exists where a reasonable officer in the identical circumstances could have believed that probable cause existed." *Id.* (citing *Eslinger*, 555 F.3d at 1327)).

After thoroughly reviewing the evidence presented in the light most favorable to Plaintiff, the Court finds that Detective Cole had actual probable cause to arrest Plaintiff. As noted above, while investigating the underlying burglary, Detective Cole obtained the sworn testimony of Mr. Beland. (Doc. #37-1 at 18). Through this testimony, Mr. Beland was able to identify several individuals who were connected to the crime, including an individual named "Adam." (Doc. #38 at 5:12-5:54; #35-1 at 5). Although Mr. Beland was unable to provide Detective Cole with a last name for "Adam" on the day of his sworn testimony, the fact remains that Mr. Beland was able to later identify "Adam" as Plaintiff, Adam Johnson. (Doc. #37-1 at 60:21-61:15).

While Plaintiff contends that the testimony of Jason Hayes and Cassandra Braun contradicts Mr. Beland's testimony, the Court disagrees. In his testimony, Mr. Beland noted that he witnessed Plaintiff assist Mr. Lopez with loading weapons into a dark colored truck. (Doc. #38 at 5:12-5:54; #35-1 at 5). In contrast, both Mr. Hayes' and Ms. Braun's statements relate to a later time period when the guns were being unloaded and

were already unloaded, respectively, into another residence, not the time period that Mr. Beland witnessed. (Doc. #39-2; #39-1).  The fact that neither Mr. Hayes nor Ms. Braun testified to witnessing Plaintiff being involved in these earlier events does not contradict or negate Mr. Beland's testimony that explicitly places Plaintiff at the Lopez residence when the guns were being loaded into a truck.  This point is furthered by the fact that Mr. Hayes' testimony asserts that the stolen weapons were dropped off to the other residence in Chad Howard's car; but Mr. Lopez, who admitted to being involved and helping load the weapons, confirmed Mr. Beland's testimony that the weapons were loaded into "Adam's truck."  (Doc. #39-1 at 2; #35-3 at 5).  This discrepancy in vehicle descriptions clearly indicates that two distinct time periods were being testified to and that Mr. Beland's testimony remains uncontradicted when compared to Mr. Hayes' and Ms. Braun's testimony.

Plaintiff's next argument that "[t]he contradictory facts were glaring" between Mr. Beland's and Mr. Lopez's testimony fairs no better than his first.  In his testimony, Mr. Lopez appears to note that on the night when the weapons were loaded into Plaintiff's truck, Chad Howard and Kyle McCartney were the only individuals present.  (Doc. #35-3 at 4).  However, when Detective Cole inquired "[i]n whose car," Mr. Lopez replied that "[i]t was ah Adam, Adam's truck."  (Doc. #35-3 at 5).  When Detective Cole inquired further by stating, "Adam's truck," Mr. Lopez replied, "[a]h yeah it was Adam."  (Doc. #35-3 at 5). Therefore, Mr. Lopez's testimony is unclear as to whether Plaintiff was driving the truck that was being loaded or whether Chad Howard and Kyle McCartney were simply using Plaintiff's truck.  But as Defendants correctly note, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve

issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 213 F.3d 1228, 1234 (11th Cir. 2002). Here, the fact remains that an admitted active participant in the underlying crime, Mr. Lopez, identified that, at the least, Plaintiff's vehicle was involved. When this fact is added to Mr. Beland's identification of Plaintiff as the "Adam" he witnessed assist Mr. Lopez with loading weapons into the truck, it is clear that these facts aided Detective Cole, based on the totality of the circumstances, in concluding that Plaintiff was involved in the underlying crime.

Plaintiff's third argument contends that because Plaintiff's photo in the six-person lineup did not exhibit his shoulders, while the other five photos did, Plaintiff's photo was "highly suggestive," and the lineup was therefore biased. In support, Plaintiff relies on the "two-part test developed for determining the constitutionality of the admission into evidence of photographic array identifications" set out in *Neil v. Biggers*, 409 U.S. 188 (1972). (Doc. #39 at 8, ¶ 27). But the Court believes this reliance might be misplaced.

Although the Eleventh Circuit has not addressed this issue, the Sixth Circuit recently clarified, *albeit* in a non-binding, unpublished opinion, that *Biggers* "control[s] whether a photo lineup and witness identification can be used as evidence **at trial**." *Legenzoff v. Steckel*, 564 F. App'x 136, 142 n.3 (6th Cir. 2014) (emphasis in original). Similar to the instant case, "[t]he inquiry [in *Legenzoff*], however, focuse[d] on . . . probable cause[,]" and "evidence that supports probable cause for an arrest is not always admissible at trial." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 256 (1983)). In following four other circuits, the Sixth Circuit did "not find that it is necessary for [their] [] analysis to formally incorporate into [their] probable cause discussion the *Bigger's* framework, which

is commonly employed for the admissibility of witness identifications at trial." *Id.* (citing *Robinson v. Cook,* 706 F.3d 25, 34 (1st Cir. 2013); *Stansbury v. Wertman,* 721 F.3d 84, 91 (2nd Cir. 2013); *Phillips v. Allen,* 668 F.3d 912, 914–15 (7th Cir. 2012); *Good v. Curtis,* 601 F.3d 393, 398 (5th Cir. 2010)).

But the Sixth Circuit quickly noted that it was not "turning a blind eye to potentially suggestive police procedures." *Id.* Rather, the Sixth Circuit stated that "[t]hese are still 'relevant considerations in the totality-of-the-circumstances analysis that has traditionally guided probable cause determinations' and [courts should] consider them." *Id.* (quoting *Gates,* 462 U.S. at 233). As such, the Sixth Circuit noted that courts should focus on "whether it was clearly established that a reasonable officer would not find probable cause where [a witness] identified [the suspect] using a possible suggestive photo array." *Id.* at 141.

Regardless of whether the Court utilizes the *Legenzoff* Court's traditional totality-of-the-circumstances probable cause analysis or the higher standard set out in *Biggers*, the Court finds that the lineup was not suggestive, and therefore does not itself raise an issue of material fact that would prevent the Court from granting summary judgment to Detective Cole on the basis of qualified immunity. But because Plaintiff responded to Defendants' Motion utilizing the higher standard set out in *Biggers*, the Court will address Plaintiff's argument under that framework. As noted above, in *Biggers*, the Supreme Court set out a "two-step analysis in assessing the constitutionality of a trial court's decision to admit out-of-court identifications." *Cikora v. Dugger,* 840 F.2d 893, 895 (11th Cir. 1988). Under the first step, courts "must determine whether the original identification procedure was unduly suggestive." *Id.* (citations omitted). Instead of providing case law and

significant analysis for this first step before continuing on to the second step, Plaintiff provides a single conclusory sentence, stating "the photo of [Plaintiff] in the alleged photo line up [sic] was zoomed n [sic] compared to the other photos, making it highly suggestive." (Doc. #39 at 8, ¶ 27).

Although Plaintiff quickly concludes that Plaintiff's photo was "highly suggestive," and that the Court should therefore progress to *Biggers'* second step, the Court disagrees.   A review of the lineup in question clearly indicates that each of the six individuals have very similar facial features and haircuts. (Doc. #35-2).  While Plaintiff is correct that his picture is slightly "zoomed in" compared to the others, this sole discrepancy is negligible at best. (Doc. #35-2).  While no courts in the Eleventh Circuit have analyzed an objection to a lineup over a suspect's picture being "zoomed in" when compared to the others, this objection has been addressed and rejected by other courts. For example, in *U.S. v. James*, the defendant claimed that the "array [was] unnecessarily suggestive because only two of the photos [were] 'close-ups,' one depicting the defendant and the other depicting a man with a conspicuous scar on his right cheek." 834 F.Supp.2d 1, 3 (D. Mass. 2011).

In rejecting the defendant's objection, the *James* Court noted that such an objection "grasps at straws." *Id.*  As the court explained, "[a]lthough the defendant is somewhat closer to the camera than several of the other men photographed, the features of all photographed are equally discernable." *Id.*  Here, just as in *James*, Plaintiff "offer[s] no legal precedent or common-sense reason to support the proposition that a moderately zoomed-in photo of a suspect would be suggestive of that suspect's guilt." *Id.*; *see also United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994) ("While it is true that the

photograph of [the suspect] is slightly brighter and slightly more close-up than the others, we find that these differences did not render the array suggestive."). Consequently, the Court finds that the fact that Plaintiff's photograph in the lineup was slightly zoomed-in does not make the photographic lineup highly suggestive. Because the Court finds that plaintiff's photograph in the lineup was not suggestive, there is no need to progress to the second step of the *Biggers* analysis. *See Cikora*, 840 F.2d at 897 (noting that when the district court concludes "that the photo array was not impermissibly suggestive, [the court] need not reach the five-factor [portion of the *Biggers*] test").

Plaintiff's next argument disputes the credibility of Mr. Beland's testimony. As noted above, Plaintiff first points the Court's attention to the fact that it was dark outside. But the Court does not find this to be a credible basis for discrediting Mr. Beland's testimony presented. In his testimony, Mr. Beland was able to identify Chad Howard's vehicle sitting down the street, serving as a look-out while the guns were being loaded. (Doc. #38 at 5:12-5:54; #35-1 at 5). Therefore, it is doubtful that it was too dark for Mr. Beland to become familiar with an individual's face who was standing a mere few feet away from him when he was able to identify a vehicle located a significantly further distance away. Second, Plaintiff notes that Mr. Beland admitted to being "rushed away by Mr. Lopez." While it might be true that Mr. Lopez "rushed" Mr. Beland away, Mr. Beland made contact long enough with the individuals loading the truck to ascertain their names and entertain a conversation. Thus, Mr. Beland seemingly had enough time to observe the events he testified to.

Third, Plaintiff notes that during his sworn testimony, Mr. Beland was not aware whether Adam was the real name of the individual that he spoke to. While this appears

to be true, it does not serve in any fashion to discredit Mr. Beland's testimony due to the fact that Mr. Beland was able to identify Plaintiff from a lineup.  As such, while Mr. Beland might have been unsure whether the individual he encountered was actually named Adam, he confirmed the individual's name was in fact Adam when he later identified Plaintiff in the lineup.  Finally, Plaintiff correctly notes that Mr. Beland was unable to identify "Adam" from the first six photos that Detective Cole showed him during his sworn interview.  But this fact does not discredit Mr. Beland's testimony.  Mr. Beland was not able to identify Plaintiff from the first six photos because Plaintiff's photo was not included in those first six photos shown to him.  And Plaintiff fails to cite any support for his contention that if a witness cannot identify a person of interest in the first six photos shown to him then the witness' testimony is not credible.  Therefore, the Court declines to pioneer Plaintiff's crafted contention.

Finally, Plaintiff presents the testimony of his expert witness, Kevin Kozak, who opined that Detective Cole did not have sufficient facts to establish probable cause for Plaintiff's arrest.  (Doc. #39-8).  But as Defendants correctly note, experts are disqualified from providing an opinion as to whether Detective Cole lacked probable cause to arrest Plaintiff. *See Kobie v. Fifthian, 2:12-CV-98-FTM-29DNF, 2014 WL 1652421, at \*9 (M.D. Fla. Apr. 23, 2014)* (ruling that at trial, an expert witness "may not state his opinion that [the] [d]efendant lacked probable cause to arrest [the] [p]laintiff and search his business").  Therefore, because the Court has rejected each of Plaintiff's previous arguments, Mr. Kozak's testimony by itself fails to assist Plaintiff in meeting his burden of illustrating a genuine issue of material fact. *See Avirgan, 932 F.2d at 1577* ("A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden

of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial.").

Based on the foregoing, the Court finds that Detective Cole had actual probable cause to arrest Plaintiff. Detective Cole had sufficient knowledge based on the testimony of both Mr. Beland and Mr. Lopez to "warrant a reasonable belief that [Plaintiff] had committed . . . a crime." *Atterbury*, 322 F. App'x at 727 (internal quotations and citations omitted). Plaintiff's comprehensive arguments, which the Court rejected above, fail to illustrate that there was not "a probability or substantial chance of criminal activity." *Id.* Based on the evidence presented, even when viewed in the light most favorable to Plaintiff, it is clear that Detective Cole maintained more than "mere suspicion." *Id.* Consequently, Detective Cole is entitled to qualified immunity with regard to Counts 4 and 5.

As such, the Court grants summary judgment in favor of Defendant Thomas Cole on Counts 4 and 5 of Plaintiff's Amended Complaint.

### C. *Counts 1 and 2 against Defendant Mike Scott*

Defendants next seek summary judgment for Counts 1 and 2 on the basis that they fail as a matter of law. (Doc. #35 at 18). As Defendants explain, Plaintiff brings Counts 1 and 2, alleging false arrest and false imprisonment, respectively, against Sheriff Mike Scott in his official capacity. Because these Counts are brought against Sheriff Scott in his official capacity, Defendants aver that Plaintiff is required to, but has failed to, "establish a direct causal connection between a custom policy, practice, or procedure and the alleged constitutional deprivation." (Doc. #35 at 18). Defendants recognize that Plaintiff attempts to establish this causal connection by alleging that the LCSO "had a

'long standing *de facto* policy of making arrests without proper investigation of the facts of a case and/or obtaining arrest warrants for citizens' without probable or arguable cause." ([Doc. #38 at 17](#) (citing [Doc. #16 at 3, ¶ 12](#))).

But Defendants dispute this contention by noting that "the undisputed record evidence establishes that there was no constitutional violation, and, even if there was, there is no record evidence of a policy, practice, or procedure that could have caused the alleged violation." ([Doc. #35 at 17-18](#)).  Defendants assert that Plaintiff must establish the *de facto* policy "through evidence of the 'repeated acts of the final policymaker of the entity.'" ([Doc. #35 at 18](#) (citing [Doc. #15 at 5](#))).  While Defendants note that Plaintiff has "allege[d] that eight other individuals were affected by the alleged *de facto* policy," Defendants aver that "Plaintiff has simply searched the federal docket for other cases *alleging* claims for false arrest or false imprisonment against Sheriff Scott." ([Doc. #35 at 18](#)) (emphasis in original).  Defendants argue that these search results, however, "are . . . not evidence of a *de facto* policy" that would allow Plaintiff's Counts 1 and 2 to survive as a matter of law.  ([Doc. #35 at 18](#)).

In his Response, Plaintiff asserts Sheriff Scott's "defacto [sic] policy of allowing his deputies and detectives to extend probable cause for up to five days on the issue of possession of stolen property, burglary[,] and possession of burglary tools is contrary to Federal and Florida law and violates Plaintiff's [c]ivil [r]ights guaranteed by the U.S. Constitution and Florida Constitution."  ([Doc. #39 at 14](#), ¶ 41).  In support, Plaintiff avers that "[b]y [Sheriff Scott] failing to give guidelines or training on when probable cause no longer attaches to stolen merchandise or on how to apply probable cause generally, [Sheriff Scott] has perpetuated and allowed officers in his department to create and utilize

this defacto [sic] policy[,] . . . which is common practice in the [LCSO]." (Doc. #39 at 14, ¶ 41) (internal citations omitted).  It appears that Plaintiff principally relies on Detective Cole's deposition testimony for this proposition.

As Plaintiff explains, in his deposition, Detective Cole testified "that it was common practice for the policy of extending probable cause for up to five days to be used by detectives and officers and therefore widespread in its application."  (Doc. #39 at 14, ¶ 41).  Based on this testimony, Plaintiff asserts that "[t]he fact that this was a defacto [sic] policy in common use by the [LCSO] at the time of Plaintiff's arrest, as [Detective Cole] testified to, allowed [Detective Cole] to wrongfully arrest [] Plaintiff and there is a clear casual effect of the use of the policy and the deprivation of [] Plaintiff's constitutional rights." (Doc. #39 at 14, ¶ 42).  Plaintiff fails to cite any case law supporting this assertion, and instead continues by noting that had this *de facto* policy "not [been] in place, [Detective Cole] would have been required to further investigate the matter and would have easily discovered that [] Plaintiff was not in fact the person who helped load the weapons into the pickup truck and that it was not [] Plaintiff's pickup truck which was in fact used."  (Doc. #39 at 15, ¶ 42).

Because Plaintiff fails to specify in his Amended Complaint whether his Counts against Sheriff Scott are against him in his individual or official capacity, the Court will address both.  The Eleventh Circuit has been clear that "[t]he standard by which a supervisor is held in her individual capacity for the actions of a subordinate is extremely rigorous." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (quoting *Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir.1998)). "Supervisors can be held personally liable when either (1) the supervisor personally

participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Id.* (citing *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988)).  However, "[t]he central tenet in both offenses is a constitutional or statutory violation. . . ." *Id.*

Here, based on the extensive analysis conducted above, the Court has found that there has been no constitutional violation.  Rather, Detective Cole maintained probable cause when he arrested Plaintiff, thereby preventing Plaintiff from pursuing his § 1983 claims against Detective Cole.  And where a plaintiff's underlying § 1983 claims fail, the plaintiff's claims under a theory of supervisory liability also fail.  *See Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) ("Because we conclude that Plaintiff's constitutional rights were not violated . . . Plaintiff cannot maintain a § 1983 action for supervisory liability against [the] Sheriff.").  Therefore, Plaintiff's claims against Sheriff Scott in his individual capacity fail.

Indeed, "[a] claim asserted against an individual in his or her capacity is, in reality, a suit against the entity that employs the individual."  *Mann*, 588 F.3d at 1309 (citing *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)).  But when a court finds "no support for any of the federal claims being made against [the defendants] in their individual capacities[,]" "there is no basis and no support for the similar claims made against them in their official capacities."  *Id.*  Therefore, because there was no constitutional violation to support Counts 1 and 2 against Sheriff Scott in his individual capacity, Plaintiff's Counts 1 and 2 against Sheriff Scott in his official capacity also fail.

Consequently, the Court grants summary judgment in favor of Defendant Mike Scott on Counts 1 and 2 of Plaintiff's Amended Complaint.

### D. *Counts 3 and 6 against Defendants Mike Scott and Thomas Cole*

Defendants next seek summary judgment as to Counts 3 and 6, alleging negligence, asserted against Sheriff Scott and Detective Cole on the basis that there is no duty to support these claims, and, as a result, these claims fail as a matter of law. (Doc. #35 at 19).  In support, Defendants note that "Plaintiff alleges that Defendants owed a duty to the general public to properly investigate and enforce the laws of the United States and Florida and not violate the rights of the general public in doing so." (Doc. #35 at 19 (citing Doc. #16 at 11, 20)).  But "[a]s a threshold matter," Defendants aver that "Plaintiff has not alleged a duty that was owed specifically to him." (Doc. #35 at 19).  And as Defendants explain by citing a case from our sister district, "[d]uties owed by a government entity to the general public do not create a duty of care owed to specific individuals." (Doc. #35 at 19 (citing *Smith v. City of Plantation*, 19 F.Supp.2d 1323, 1331 (S.D. Fla. 1998)).  Therefore, Defendants contend that "[w]here there is no duty, there can be no breach, and Plaintiff's claims for negligence fail as a matter of law." (Doc. #35 at 19).

In the alternative, however, Defendants argue that should the Court find "a duty owed to Plaintiff individually, Plaintiff's claims are still fatally flawed." (Doc. #35 at 19).  First, Defendants note that it appears that both Counts 3 and 6 are plead against Sheriff Scott and Detective Cole, respectively, in their individual capacities. (Doc. #35 at 19).  But as Defendants explain, Fla. Stat. § 768.28(9)(a) exempts Sheriff Scott and Detective Cole from liability in tort for all actions other than those "either outside the scope of their

employment, or [] within the scope of their employment and [] performed in bad faith or malicious purpose or with wanton and willful disregard for human rights." (Doc. #35 at 20) (citations and brackets omitted).  According to Defendants, because "Plaintiff has failed to even *allege* that Defendants acted in bad faith, or with a malicious purpose, or in wanton or willful disregard for human rights," Plaintiff's negligence claims against Defendants in their individual capacities fail.  (Doc. #35 at 20) (emphasis in original).

On the chance that Plaintiff is asserting Counts 3 and 6 against Defendants in their official capacities, Defendants note that "the Eleventh Circuit has recognized that, under Florida law, there is no common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer . . . to enforce the law." (Doc. #35 at 21) (citations and quotations omitted).  Defendants also note that "[t]he power of a police officer to choose whether to make an arrest or enforce the law is a discretionary function." (Doc. #35 at 21) (citations and quotations omitted).  Therefore, Defendants aver that in their official capacities, they "cannot be held liable under Florida law for the discretionary decision to arrest Plaintiff." (Doc. #35 at 21).

In response, Plaintiff begins by noting that, although it is not clarified in his Amended Complaint, Plaintiff's Counts are brought against Sheriff in his official capacity and not in his individual capacity. (Doc. #39 at 16, ¶ 45). In capricious fashion, Plaintiff goes on to state that Count 3 and Count 6 "are pled in the alternative, if the Court finds that [Sheriff Scott] is negligent for the acts of [Detective Cole], than [sic] the Court would have to dismiss the negligent [sic] count against [Detective Cole], but since this is pled in the alternative, if the Court found negligence on the part of [Detective Cole] because he acted in bad faith, with a malicious purpose or with wanton and willful disregard for human

rights and [Sheriff Scott] could not be held liable for that negligence, then the count for negligence against [Detective Cole] would stand against him in accordance with [Fla. Stat.] § 768.28(9)(a)." (Doc. #39 at 16, ¶ 46).  Plaintiff continues by asserting "[t]here has never been an allegation by [Plaintiff] that [Detective Cole] acted in bad faith, with a malicious purpose or with wanton and willful disregard for human rights, only that he conducted an extremely poor investigation, followed the common practices which were the defacto [sic] policies of [Sheriff Scott] and failed to have probable cause or arguable probable cause." (Doc. #39 at 16, ¶ 47).

Next, Plaintiff cites an Eleventh Circuit case and several Florida state cases in support of an argument that Detective Cole's "failure to properly investigate the underlying action created a zone of risk that innocent persons could be arrested for something they had nothing to do with." (Doc. #39 at 17, ¶ 48).  As Plaintiff sees it, "Defendants mistake the issue in this action [because] . . . [i]t is the operation process which detectives as a whole and in this case it is how [Detective Cole] came to the conclusion that there was probable cause to make the arrest in the first place."  Plaintiff asserts that "[i]t is an operational function to insure [sic] that the detectives and deputies are properly trained to conduct a criminal investigation or to determine if there is probable cause or arguable probable cause that is at issue." (Doc. #39 at 17, ¶ 49).  Plaintiff seemingly supports this argument by noting several investigation tactics that he believes should have been conducted, but were not.  (Doc. #39 at 17, ¶ 49).

At this point, the Court declines to recite any more of Plaintiff's Response because it appears that he is arguing as if he pled counts for negligent training and/or negligent supervision.  But this is not what is alleged in his Amended Complaint.  A review of the

Amended Complaint shows that the substantive portions of both Counts 3 and 6 are identical[3], and state, in full:

> At that time and place, the Defendants negligently investigated a burglary of a home and in the course of the investigation failed to properly identify a suspect even though they had in their possession evidence and information that the Plaintiff was not involved in any crime which they were investigating and negligently/wrongfully arrested the Plaintiff and held him in jail for an extended period of time for no reason.

(Doc. #16 at 11-12, ¶ 40; 20, ¶ 71).  As exhibited, Plaintiff failed to make a single allegation regarding negligent training or negligent supervision.  Instead, Plaintiff makes allegations related to Defendants "negligently investigat[ing]" and "negligently arrest[ing]" him.

The Eleventh Circuit has noted that the federal pleading "standard . . . does **not** afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (emphasis added).  Instead, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Id.* at 1315.  "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Id.* (citation omitted).  Plaintiff's opportunity to amend his Amended Complaint in compliance with the Federal Rules of Civil Procedure has expired.  The Court will disregard any argument regarding negligent training and supervision and will focus on the claims that Plaintiff did assert in his Amended Complaint for negligent investigation and negligent arrest.

---

[3] The Court notes that the only difference between the substantive portions of Counts 3 and 6 is that paragraph 40 for Count 3 states "Defendants," while paragraph 71 for Count 6 states "Defendant, Cole." (Doc. #16 at 11-12, ¶ 40; 20, ¶ 71).

Although Plaintiff attempts to concede that Count 3 against Sheriff Scott is against him in his official capacity (Doc. #39 at 16, ¶ 45), Plaintiff failed to specify this capacity in his Amended Complaint.   Therefore, the Court will analyze Plaintiff's negligence claim against Sheriff Scott in both his official and individual capacities.   It is no surprise that in order "[t]o state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Albra v. City of Fort Lauderdale, 232 Fed. Appx. 885, 888 (11th Cir. 2007)* (citations omitted).

Plaintiffs should be aware, however, that "[t]he Florida Supreme Court has recognized that there is no 'common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to enforce the law.'" *Id.* (quoting *Everton v. Willard, 468 So. 2d 936, 938 (Fla. 1985)* (ellipses omitted). Put differently, "[t]he responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person." *Pollock v. Florida Dep't of Highway Patrol, 882 So. 2d 928, 935 (Fla. 2004)*.

Here, Plaintiff asserts that he "clearly states in [p]aragraph 39 of the Amended Complaint that [Sheriff Scott] had a specific duty to [Plaintiff] and not just to the general public, it is pled twice in the same paragraph." (Doc. #39 at 16, ¶ 44).   But a review of paragraph 39 indicates that this is not the case. When read in full, it appears that Plaintiff alleges Sheriff Scott owes a general duty to all citizens:

> 39. [Sheriff Scott] had a duty to the Residents of Lee County Florida, the citizens of Florida, the Citizens of the United States of America and guests visiting or traveling through Lee County, Florida, including but not limited to [Plaintiff], to properly investigate and enforce the Laws of the

> United States of America and the State of Florida and in doing so, not violate the rights of the Residents of Lee County, Florida, the Citizens of Florida, the citizens of United States of America and guests visiting or traveling through Lee County, Florida, including but not limited to the Plaintiff.

(Doc. #16 at 11, ¶ 39).  As exhibited, Plaintiff alleges that Sheriff Scott had a duty to all residents of Lee County, all citizens of Florida, and all citizens of the United States, which includes, "but [is] not limited to," Plaintiff as a member of each of those three groups.

In other words, Plaintiff did not allege that Sheriff Scott owed a specific or special duty to him, but instead to three groups that Plaintiff is a member of.  Plaintiff also failed to provide any analysis in his Response regarding why Sheriff Scott owed him a specific or special duty.  As the Eleventh Circuit noted, however, a general duty allegation will not support a negligence claim against a police officer for their discretionary power.  *Albra,* *232 Fed. Appx. at 888*. And "[t]he power of a police officer to choose whether to make an arrest or enforce the law is a discretionary function." *Id.* (citation omitted).  Therefore, Plaintiff's negligence claim against Sheriff Scott in his official capacity fails on this basis alone.

Even if the Court looked past Plaintiff's general duty allegation and assumed Plaintiff's negligence claim against Sheriff Scott was against him in his individual capacity, Plaintiff's claim fails as a matter of law.  Fla. Stat. § 768.28(9)(a) provides sovereign immunity to Sheriff Scott against all tort actions unless Sheriff Scott "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Nowhere in Plaintiff's Amended Complaint is it alleged that Sheriff Scott acted in bad faith or with malicious purpose or in a manner exhibiting wanton and will disregard of human rights, safety, or property.  (Doc. #16 at 1-3, 11-12).

Therefore, Sheriff Scott maintains sovereign immunity against Plaintiff's negligence count asserted against him in his individual capacity.

In addition, Plaintiff's negligence claim against Detective Cole in his official capacity also fails a matter of law.  Unlike the duty argument regarding Sheriff Scott, in his Response, Plaintiff fails to argue that he alleged that Detective Cole owed him a specific duty.  And a review of the Amended Complaint reveals that Plaintiff used the exact same[4] duty paragraph in his negligence claim against Detective Cole as he used in his negligence claim against Sheriff Scott, which is quoted above.  *Cf.* (Doc. #16 at 11, ¶ 39 with 20, ¶ 70).  But as noted, a general duty allegation will not support a negligence claim against a police officer for performing his discretionary functions.  *See Albra*, 232 Fed. Appx. at 888. Therefore, because Plaintiff brought his negligence claim against Detective Cole for negligently arresting and investigating him, both of which are discretionary functions, Plaintiff's negligence claim against Detective Cole in his official capacity fails as a matter of law.

Finally, assuming Plaintiff's negligence claim against Detective Cole is brought against him in his individual capacity, Plaintiff's claim also fails.  As noted above, under Fla. Stat. § 768.28(9)(a), police officers maintain sovereign immunity against personal liability in tort claims unless the officers conduct certain actions.  In his Response, Plaintiff admits that "[t]here has never been an allegation by [Plaintiff] that [Detective Cole] acted in bad faith, with a malicious purpose or with wanton and will disregard for human rights. . . ." (Doc. #39 at 16, ¶ 47).  Consequently, because Plaintiff concedes that he has never

---

[4] The Court notes that the only difference between paragraphs 39 and 70 in Plaintiff's Amended Complaint is that in paragraph 39 Plaintiff alleged "[t]he Defendant, Sheriff, had a duty" (Doc. #16 at 11, ¶ 39), whereas in paragraph 70, Plaintiff alleges  "[t]he Defendant, Cole, had a duty. . . ." (Doc. #16 at 20, ¶ 70).

alleged that Detective Cole conducted any actions that would exempt him from sovereign immunity under § 768.28(9)(a), Plaintiff's negligence claim against Detective Cole in his individual capacity fails as a matter of law.

Based on the foregoing, the Court grants summary judgment on Counts 3 and 6 in favor of Defendants Mike Scott and Thomas Cole.

Accordingly, it is now

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. #35) is **GRANTED** as to Counts 1, 2, 3, 4, 5, and 6.  Moreover, Counts 7, 8, and 9 are **DISMISSED WITH PREJUDICE.** All pending motions are **DENIED AS MOOT.** The Clerk is directed to **CLOSE** this action and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this 27th day of October, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record